EDWARD R. ARDINI, JR., JUDGE
Clay Chastain ("Chastain") filed an action against Bill Geary ("Geary") in his capacity as City Attorney for the City of Kansas City alleging malfeasance relating to the advancement of an initiative petition for a light rail ordinance in Kansas City. The Circuit Court of Jackson County entered an order dismissing Chastain's claims with prejudice, finding that Geary was performing a governmental function and thus entitled to sovereign immunity. Chastain appeals.
FACTUAL AND PROCEDURAL BACKGROUND[1]
This appeal arises from the alleged conduct of Geary as it relates to the advancement of an initiative petition for a light rail ordinance in the City of Kansas City. We set forth a general overview of the initiative petition process in Kansas City to provide a better understanding of this appeal. Section 701 of the Charter of the City of Kansas City, Missouri ("City Charter") includes a procedure for citizens to propose a new ordinance through a petition process that requires signatures from at least five percent of city electors. The City Charter specifically mandates that "[e]ach petition paper shall include as a part thereof a statement giving the names and addresses of five electors of the city, who, as a committee of petitioners, shall be officially regarded as filing the petition ..." § 731. The City Clerk examines whether the submitted petition is in proper form and contains the requisite signatures. § 702. The City Council may either voluntarily place the ordinance before the voters or the committee of petitioners may require that the ordinance be placed before the voters if they "so certify to the City *844 Clerk[.]" Id. The proposed ordinance is then submitted "to the electors at the next available municipal or state election[.]" § 703.
The initiative petition at issue in this appeal was brought forward by the Light Rail Initiative's Committee of Petitioners ("Light Rail Committee") of which Chastain was a member, leader, and chief spokesperson. In 2016, the Light Rail Committee hired an attorney to assist them in the drafting of a light rail initiative petition to be circulated among Kansas City voters. As allowed under section 407(a)(6) of the City Charter, Chastain and the Light Rail Committee's attorney submitted a draft of the petition that the Light Rail Committee proposed to circulate to the voters to City Attorney Geary for his review. City Attorney Geary reviewed the draft petition and suggested several revisions, which were incorporated into the final petition that the Light Rail Committee circulated for signatures.
A few months later, the Light Rail Committee submitted the petition with the requisite signatures to the City. In accordance with section 702 of the City Charter, the City Clerk deemed the petition to be in proper form and sent it to the City Council for further review. The Council referred the petition to its Transportation and Infrastructure Committee.
At a hearing before the Council's Transportation and Infrastructure Committee, City Attorney Geary appeared and stated that the light rail initiative was "illegal"[2] and thus could be repealed if approved by voters. City Attorney Geary did not mention that Chastain and the Light Rail Committee's attorney had voluntarily submitted the petition for his legal review prior to circulation or that the Light Rail Committee had incorporated his suggested revisions. Additionally, the Light Rail Committee's attorney allegedly did not attend the hearing at the request of City Attorney Geary. The initiative was nevertheless placed on the ballot, where it was rejected by the voters.
Despite the fact that the light rail initiative was put before the voters and failed, Chastain filed this action in the Circuit Court of Jackson County against City Attorney Geary for malfeasance and against the Light Rail Committee's attorney for malpractice. The claims against the Light Rail Committee's attorney were dismissed based on Chastain's lack of standing in his individual capacity to bring suit against the Light Rail Committee's attorney.[3] City Attorney Geary also filed a motion to dismiss, arguing that he was protected by sovereign immunity and that Chastain failed to allege facts that, if proven, would constitute wrongful, actionable conduct. At the request of the trial court, the parties submitted further briefing and Geary added the additional ground that Chastain lacked standing, in his individual capacity, *845 to bring the malfeasance claims against Geary. The trial court granted Geary's motion to dismiss on sovereign immunity grounds. Chastain appeals.
DISCUSSION
Final Judgment
In his brief to this Court, Geary argues that this appeal should be dismissed for lack of a final judgment and, alternatively, because Chastain failed to properly identify in his notice of appeal the ruling from which this appeal is taken. Because we are without jurisdiction in the absence of a final, appealable judgment, we address these issues first. City of St. Louis v. Hughes , 950 S.W.2d 850, 852-53 (Mo. banc 1997).
Section 512.020[4] provides, in relevant part, that "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited ... may take his or her appeal to a court having appellate jurisdiction from any ... [f ]inal judgment in the case [.]" (emphases added). The Missouri legislature has defined a "judgment" as "the final determination of the right of the parties in the action." § 511.020. A judgment has further been defined by our Missouri Court Rules of Civil Procedure,[5] which "have the force and effect of law." Mo. Const. art. V, § 5. Rule 74.01(a) provides, in relevant part, that "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." This requirement has been interpreted strictly to "establish[ ] a 'bright line' test as to when a writing is a judgment" in order "to assist the litigants and the appellate courts by clearly distinguishing between when orders and rulings of the trial court are intended to be final and appealable and when the trial court seeks to retain jurisdiction over the issue." Hughes , 950 S.W.2d at 853. For example, an order dismissing a lawsuit with prejudice, even if signed by the judge, is not final and appealable unless it is denominated as a "judgment" or "decree." Manzer v. Sanchez , 967 S.W.2d 268, 269 (Mo. App. E.D. 1998). A docket entry denominated as a judgment but not signed by the judge also is not sufficient. See, e.g. , Lowery v. Air Support Int'l, Inc. , 971 S.W.2d 323, 324 (Mo. App. S.D. 1998) (holding that docket entry with typewritten initials of judge did not satisfy the requirement that the writing is signed by the judge).
Here, Chastain's claims for malfeasance against Geary were dismissed by the trial court through an Order entered on March 27, 2017, with a corresponding docket entry reading "Judgment Entered." The Order dismissing Chastain's claims was not denominated a "Judgment" and the docket entry was not signed by the judge. Thus, the requirements of Rule 74.01(a) were not met, as Missouri courts have routinely held that the separate document and docket entry cannot be considered together to satisfy the rule's requirements. See, e.g. , Amoso Realty, LLC v. Milton , 513 S.W.3d 373, 376 (Mo. App. E.D. 2016) (holding that signed order denying motion to intervene and associated with docket entry stating "SEE ORDER AND JUDGMENT" was not a final, appealable judgment); Orf v. Orf , 208 S.W.3d 306, 307 (Mo. App. E.D. 2006) (holding that signed written order not denominated a "judgment" and corresponding docket entry stating "Judgment *846 Entered" but not signed or initialed by the judge is not a final, appealable judgment).
After Chastain filed his notice of appeal, he received notice from this Court suggesting the absence of a final, appealable judgment.[6] Thereafter, the trial court entered an Order Nunc Pro Tunc amending the March 27, 2017, dismissal to read "Judgment of Dismissal."[7] Chastain filed the Order Nunc Pro Tunc with this court, and the parties were notified that the appeal would be allowed to proceed but that issues concerning our authority to hear the appeal could still be raised.
Although Rule 74.06(a) provides that "[c]lerical mistakes in judgments, orders[,] or other parts of the record ... may be corrected by the court at any time[,]" "[i]t is improper to use a [nunc pro tunc ] order ... to conform to what the court intended to do but did not do." Keck v. Keck , 996 S.W.2d 652, 654 (Mo. App. E.D. 1999) (citations omitted). The nunc pro tunc process is generally an inappropriate mechanism to convert an order into a judgment because such changes "relate back to the original judgment[.]" Id. at 654-55 ; Pirtle v. Cook , 956 S.W.2d 235, 241 (Mo. banc 1997) (citations omitted). The date of the judgment is relevant to the trial court's jurisdiction, post-trial motions, and appeals. See, e.g. , Rule 75.01 ("The trial court retains control over judgments during the thirty-day period after entry of judgment[.]"); Rule 78.04 ("Any motion for new trial ... shall be filed not later than thirty days after the entry of judgment."); Rule 81.04(a) (stating that "the notice of appeal shall be filed not later than ten days after the judgment ... appealed from becomes final"). Thus, converting an order into a judgment though the nunc pro tunc process may result in the timing issues sought to be avoided by Rule 74.01(a), the purpose of which is to "establish[ ] a bright-line standard designed to notify all parties with certainty that the court has entered judgment." Keck , 996 S.W.2d at 654.
Despite the well-discussed concerns and uncertainties attendant to the use of nunc pro tunc amendments to convert a previous ruling into a final judgment, our Supreme Court has allowed an appeal to proceed where "it [was] clear that the trial court intended to finalize the judgment for purposes of appeal" by entering a nunc pro tunc order to retitle an order as a judgment. Brooks v. Brooks , 98 S.W.3d 530, 532 (Mo. banc 2003) ; but see Velocity Invs., LLC v. Korando , 291 S.W.3d 322, 323-24 (Mo. App. E.D. 2009) (distinguishing Brooks and stating that it was not clear in the record that the trial court intended to finalize the judgment where the court simply marked through the word "Memorandum" and replaced it with "Judgment" and initialed the change and did not enter a new judgment with a new date). The Supreme Court found that the denomination of the order as a judgment satisfied Rule 74.01(a) as of the date that the nunc pro tunc order was entered. Id.
Here, it is clear from the record that the trial court intended with its Order Nunc Pro Tunc to denominate the previously issued orders dismissing Chastain's claims against the Committee's attorney *847 and Geary as final, appealable judgments. Accordingly, we find that a final, appealable judgment was entered on May 16, 2017, the date of the trial court's Order Nunc Pro Tunc.[8]
Notice of Appeal
Geary also raises issues with Chastain's Notice of Appeal, which noted the date of the judgment as April 25, 2017, and inexplicably included as an attachment the trial court's Order of that date denying his motion for rehearing.
Rule 81.04(a) requires that the notice of appeal "specify ... the judgment ... appealed from[.]" As stated, supra , an appeal may only be taken from a final judgment. § 512.020. "The purpose of requiring an appellant to 'specify ... the judgment or order appealed from' in the notice of appeal is so that the appellant can demonstrate the right to appeal ..." State ex rel. Koster v. ConocoPhillips Co. , 493 S.W.3d 397, 402 (Mo. banc 2016). A notice may be held sufficient, however, where an appellant in good faith attempts to appeal from the proper judgment. See, e.g. , Triller v. Hellwege , 374 S.W.2d 104, 105 (Mo. 1963) (holding that appeal improperly taken from order overruling motion would be treated as a good-faith attempt to appeal from final judgment and would not be dismissed). "[F]ormal averments contained in a notice of appeal are to be liberally construed in order to permit appellate review so long as the opposing party has not been misled to his irreparable harm." Allison v. Sverdrup & Parcel & Assocs., Inc. , 738 S.W.2d 440, 443 (Mo. App. E.D. 1987) (citation omitted). "Technical adherence to the formal averments of a notice of appeal is not jurisdictional," and "it is the duty of an appellate court freely to exercise its jurisdiction to provide a review on the merits in every instance that it may properly do so." Wills v. Whitlock , 139 S.W.3d 643, 658 (Mo. App. W.D. 2004) (citations omitted).
Chastain's notice of appeal, although riddled with mistakes and inconsistencies, appears to have been made in good faith, and Geary has not demonstrated that he suffered irreparable harm because of Chastain's failure to technically adhere to the formal requirements of a notice of appeal. Chastain filed the trial court's Order Nunc Pro Tunc amending the dismissal order to read "Judgment of Dismissal" with this Court, Chastain's brief clearly argues that the trial court erred in granting Geary's Motion to Dismiss, and Chastain included the trial court's dismissal of his claims against Geary in the appendix to his brief. Geary, in turn, fully responded to Chastain's claim of error. Accordingly, we decline to dismiss the appeal.
Standing
In his additional briefing to the trial court, Geary alleged that Chastain lacked standing in his individual capacity to bring the malfeasance claims against Geary. The trial court granted Geary's motion to dismiss based on sovereign immunity grounds, noting that it accordingly did not need to address the standing issue. However, "[s]tanding is the requisite interest that a person must have in a controversy before the court[,]" and "a party that lacks standing cannot obtain any relief."
*848 Davidson Ins. Agency, Ltd. v. West Plains R-7 School Dist. , 235 S.W.3d 89, 90 (Mo. App. S.D. 2007) (citations omitted). "Where ... a question is raised about a party's standing, courts have a duty to determine the question of their jurisdiction before reaching substantive issues" because the court does not have subject matter jurisdiction to decide substantive issues if the party lacks standing. Id. at 91 (citation omitted); see also Warren v. Mercantile Bank of St. Louis, N.A. , 11 S.W.3d 621, 622 (Mo. App. E.D. 1999) (citation omitted). "The question of a party's standing can be raised at any time, and an appellate court may do so sua sponte. " Id. (citing State ex rel. Mathewson v. Board of Election Comm'rs of St. Louis County , 841 S.W.2d 633, 634 (Mo. banc 1992) ).
The malfeasance alleged by Chastain arises from Geary's actions in his official capacity as City Attorney relating to the advancement of the Light Rail Committee's proposed ordinance. Chastain's complaint focuses on Geary's advice regarding the legality of the Light Rail Committee's proposed ordinance, Geary's request that the Light Rail Committee's attorney not attend the hearing before the City Council's Transportation and Infrastructure Committee, and Geary's statement at that hearing that the proposed ordinance was illegal and could be repealed by the Council if approved by voters (while failing to mention the advice he had previously provided regarding the legality of the petition).
As set forth above, section 731 of the City Charter requires that an initiative petition be filed by a committee consisting of at least five electors. Accordingly, the alleged malfeasance committed by Geary during the petition process was directed at the Light Rail Committee and not Chastain individually. Cf. Jones v. Rennie , 690 S.W.2d 164, 166 (Mo. App. E.D. 1985) (holding that plaintiff lacked standing to sue in his individual capacity where bank's dealings were with plaintiff in his capacity as president and one hundred percent shareholder of company and so any wrong was done to company and not the plaintiff individually). Although Chastain's role in the advancement of the petition was prominent, section 731 of the City Charter prohibited him from advancing the light rail petition individually and required the creation of the Light Rail Committee to bring forward the initiative. Accordingly, Chastain lacked standing as an individual to bring the present action for the alleged damage caused by Geary's actions to the Light Rail Committee's efforts.[9] Cf. Sequa Corp. v. Cooper , 128 S.W.3d 69, 75 (Mo. App. E.D. 2003) ("A shareholder is without standing to sue in his individual capacity for damages to the corporation." (citing Warren , 11 S.W.3d at 622 )); Jones , 690 S.W.2d at 166 (stating same).
Because Chastain lacked standing to individually sue Geary in his official capacity as City Attorney for his alleged malfeasance relating to the petition advanced by the Light Rail Committee, we need not further address the merits of the appeal and affirm the trial court's dismissal of Chastain's claims against Geary. See City of Slater v. State , 494 S.W.3d 580, 584, 590-91 (Mo. App. W.D. 2016) (stating that circuit court dismissed plaintiff's claims because they were barred by sovereign immunity and affirming the dismissal because plaintiff lacked standing).
*849 CONCLUSION
The trial court's dismissal of Chastain's claims against Geary is affirmed.
All concur.

Although we do not reach the merits of whether Chastain's petition failed to state a claim upon which relief could be granted, the facts are set forth as though "all properly pleaded facts [are] true, giving the pleadings their broadest intendment, and constru[ing] all allegations favorably to the pleader." See Peters v. Wady Industries , 489 S.W.3d 784, 789 (Mo. banc 2016) (citation omitted).

An exhibit attached to Chastain's Complaint states that "[t]he grounds of the alleged illegality were not publicly stated but ... seem to be the same issues alleged during the pre-circulation review[,]" including:
that the sales tax revenue would be insufficient to complete all of the proposed routes; that the inclusion of multiple modes of transport and multiple funding sources violated the single subject rule; that the ordinance dictated use of park property, Union Station, and municipalities; that the proposal contemplated the use of right of ways that the City did not control; and that traffic control is an administrative matter.
The exhibit goes on to state that "[s]pecific amendments were made to the initiative petition and ordinance to address each of these concerns before the initiative was circulated."

Chastain did not appeal the dismissal of his claims against the Committee's attorney.

All statutory citations are to the Revised Statutes of Missouri 2000 as supplemented.

All citations are to the current Missouri Rules of Civil Procedure.

Chastain's Notice of Appeal noted the judgment date as April 25, 2017, and attached the Order of that date denying his Motion for Rehearing.

In the same Order Nunc Pro Tunc , the trial court changed the Order dismissing Chastain's claims against the Committee's attorney to also read "Judgment of Dismissal."

The later judgment date renders Chastain's Notice of Appeal premature. A "premature notice of appeal 'shall be considered as filed immediately after the time the judgment becomes final for the purposes of appeal.' " Coleman v. Coleman , 187 S.W.3d 331, 333 (Mo. App. E.D. 2006) (citations omitted); see also Rule 81.05(b).

Our conclusion is similar to the trial court's determination that Chastain did not have standing to individually sue the Light Rail Committee's attorney for actions related to the advancement of the initiative petition.