**TUF FLIGHT INDUSTRIES, INC., Respondent,**

v.

**Timothy D. HARRIS, Appellant.**

No. WD 62667.

Missouri Court of Appeals, Western District.

March 30, 2004.

Mark Edward Kelly, Liberty, for Appellant.

Joseph Vanover and Donald Witt, Platte City, for Respondent.

PAUL M. SPINDEN, Judge.

Tuf Flight Industries, Inc., and Timothy D. Harris, owners of adjoining commercial buildings, are quarreling over use of an alley between the buildings. All but a few feet of the alley is on Harris' property, but Tuf Flight Industries claims that it and its tenants enjoy a prescriptive easement to use the alley to get to loading docks and rear doors behind its building. The circuit court agreed with Tuf Flight Industries, and Harris appeals the circuit court's judgment. We affirm the judgment in part, reverse it in part, and remand to the circuit court.

Because Tuf Flight Industries' building is only a few feet from the property line separating its property from Harris' property, tenants cannot drive vehicles to the rear of the building without using the alley. Tuf Flight Industries' tenants have used the alley for at least 18 consecutive years. In 1998, Harris paved most of the alley with concrete and installed runoff drains and a six-inch curb along the property's boundary. He filled the area between the curb and property line with gravel. These improvements interfered with deliveries to the rear of the businesses of Tuf Flight Industries' tenants.

In October 2000, Tuf Flight Industries informed Harris that it believed that it had an easement granted to its predecessor

owners in 1974 by previous owners of Harris' property. The previous property owners had attempted to create an easement, but Harris did not discover the easement before purchasing the property or improving the alley, apparently because documents did not give an accurate legal description of the property. Harris told Tuf Flight Industries that he was not going to remove the improvements or permit Tuf Flight Industries to remove them. Tuf Flight Industries filed this lawsuit.

On March 12, 2003, the circuit court entered judgment for Tuf Flight Industries, granting it a prescriptive easement in the alley for purposes of vehicular access and deliveries.[1] It also ordered Harris to remove the curb and gravel and to change the area between the curb and property line so that it was comparable and compatible to the rest of the alley. The circuit court directed Tuf Flight Industries to pay 20 percent of costs incurred by Harris in obeying the order, to pay $10,000 to Harris for the reasonable value of improvements he had made, and to contribute 20 percent of the costs for the easement's necessary future maintenance.

■ Our review of the circuit court's judgment is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of evidence, it erroneously declares the law, or it erroneously applies the law. The law disfavors prescriptive easements, and courts should recognize them only when the elements have been established by clear and convincing evidence. *Wells v. Carpenter*, 916 S.W.2d 405, 406 (Mo.App. 1996). To establish its rights to a prescriptive easement, Tuf Flight Industries' burden was to show that its and its tenants' use of the alley was continuous, uninterrupted, visible and adverse for at least 10 years. *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 508 (Mo. banc 1993). Although Harris asserts in his point relied on that the circuit court's judgment was against the weight of evidence because Tuf Flight Industries did not present clear and convincing evidence establishing any of the elements, his argument asserts only that the evidence was insufficient to establish the elements of continuous, uninterrupted, and visible use.

■ Harris argues that continuous use requires use that is without lapse. He notes that vacancies occurred in various units in Tuf Flight Industries' building for as long as 18 months when no deliveries were made to the particular unit. The argument has no merit.

■ The argument erroneously focuses on particular tenant's use. Just as Tuf Flight Industries' owning the property since only 1999 makes no difference to its claim of a prescriptive easement—*Homan v. Hutchison*, 817 S.W.2d 944, 947 (Mo. App.1991) (prescriptive period can be established by tacking together qualifying periods of use by successive owners)—use by various tenants during the 10–year period does not matter. Use need not be constant to be continuous. Continuous use requires only a lack of break in the essential attitude of mind required for adverse use. *Whittom*, 851 S.W.2d at 508. Although this court, in *Nolte v. Corley*, 83 S.W.3d 28, 35–36 (Mo.App.2002), defined "continuous" as "without lapse, uninterrupted, for the entire statutory period," the true essence of this element is not a

---

1. The circuit court's judgment recognized two prescriptive easements: one to the alley and another to an access point between the two properties. Harris appealed only the portion of the circuit court's judgment recognizing the alley easement.

lack of break in time but a lack of break in attitude. *Jacobs v. Brewster*, 354 Mo. 729, 190 S.W.2d 894, 898 (1945). In parsing the meaning of "continuous," the *Jacobs* court quoted the RESTATEMENT OF PROPERTY: " 'The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant.' " *Id.* (quoting § 459, cmt. (b), of the RESTATEMENT (1944)).

■ Thus, that various units of Tuf Flight Industries' building were vacant for periods is not significant. Whether or not the use is sufficient to establish a prescriptive easement is a fact question to be inferred from the circumstances and the nature and character of the claimant's use. *Whittom*, 851 S.W.2d at 508. Tuf Flight Industries presented evidence that vehicles regularly made deliveries to the rear of its building via the alley from 1980 until Harris installed the curb. The vacancies did not necessarily destroy Tuf Flight Industries' continuous use. The determinative factor was, under the totality of the circumstances, whether or not Tuf Flight Industries used the alley at such intervals as convenience and its needs necessitated and, more importantly, whether or not periods of nonuse resulted from a break in the essential attitude of mind required for adverse use. No matter which tenants in Tuf Flight Industries' building were taking deliveries from 1980 until the curb's installation—and there was always at least one—someone occupying the building was always using Harris' alley to gain access to the building's rear.

■ In considering whether or not a use was uninterrupted, the courts look only at the actions of the party against whom the prescriptive right is claimed—*i.e.*, the owner of the servient estate. *See Brown v. Redfern*, 541 S.W.2d 725, 728 (Mo.App. 1976); *Trustees of Forestgreen Estates, 4th Addition v. Minton*, 510 S.W.2d 800, 803

(Mo.App.1974) (addressing whether servient estate owner's putting up barricades constituted interruption of use); *see* RESTATEMENT OF PROPERTY, *Servitudes*, § 459, cmt. c (1944) ("An interruption of an adverse use results only from an act of one against whom the use is adverse."); RESTATEMENT (THIRD) OF PROPERTY, *Servitudes*, § 2.17, cmt. j (2000) ("A servitude can be acquired by prescription only if the owner or possessor of the claimed servient estate does not effectively interrupt the adverse use prior to the end of the prescriptive period.").

Tuf Flight Industries presented sufficient evidence of uninterrupted use. Harris did not restrict its and its predecessors' full use of the alley until Harris began improving the alley in 1998. John Maloney, one of Tuf Flight Industries' tenants since 1992, testified that he regularly received deliveries via the alley until Harris installed the curb. Before then—as far back as the early 1980s—he said that he regularly observed use of the alley and could not recall a time when access to it was restricted. Keith Sargent, who operated a store in Harris' building from 1980 through 2000, said that deliveries to tenants in both buildings via the alley were regular and were not restricted until Harris installed the curb.

■ Harris next asserts that Tuf Flight Industries did not present clear and convincing evidence of visible use of the alley by it and its tenants. To establish visible use, Tuf Flight Industries' burden was to show not only that the use was open and capable of being seen, but also that Harris, as the servient landowner, had notice of the use—either actual or constructive (inferred from the surrounding facts). Courts typically conclude that visible use and actual use are sufficient to deem that the servient landowner was on notice.

*Kirkpatrick v. Webb*, 58 S.W.3d 903, 906 (Mo.App.2001).

Harris argues that Tuf Flight Industries did not establish notice because he testified that he never saw Tuf Flight Industries or its tenants use the alley and because Tuf Flight Industries did not present evidence that previous owners of the servient estate saw its use. He also argues that Tuf Flight Industries did not establish constructive notice because its witnesses did not set with reasonable precision when tenants received deliveries or account for periods of vacancies in any particular unit within the Tuf Flight building.

Again, Harris' argument misses the mark. The essence of the element is not actual notice, but Tuf Flight Industries' notorious and open use. Actual notice is not required because the point is not what Harris knew but demonstration of Tuf Flight Industries' attitude of adversity. That Harris did not actually know of Tuf Flight Industries' use—perhaps he simply refused to look—does not matter if Tuf Flight Industries' use is open—as opposed to being cloaked by the dark of night—so that any reasonable person would have discovered its existence. 4 R. POWELL, POWELL ON REAL PROPERTY § 34.10[2][f] (2003).

Tuf Flight Industries presented evidence that vehicles regularly made deliveries via the alley during business hours in plain view. That tenants and non-tenants saw this use evidenced that it was clearly visible. The circuit court reasonably inferred from these facts that Harris and his predecessors had constructive notice. Moreover, that the witnesses were not more specific in identifying the tenants taking deliveries or in accounting for periods of vacancies certainly did not negate the visibility of the use.

The circuit court properly found that Tuf Flight Industries met its burden of establishing the existence of a prescriptive easement in the alley. A mandatory injunction requiring the removal of obstructions to its use was therefore proper. *Moravek v. Ocsody*, 456 S.W.2d 619 (Mo.App. 1970). We deny Harris' first point.

■ In his second point, Harris contends that, even if the easement was proper, the circuit court erred in apportioning costs for removing the curb and gravel and completing and maintaining improvements to the alley easement. While he asserts that the circuit court correctly ordered that he share the costs with Tuf Flight Industries, he believes that a more suitable apportionment would be an equal sharing of the costs of removal, completion, and maintenance. The circuit court ordered Tuf Flight Industries to pay 20 percent of those expenses and assigned the balance to Harris.

The circuit court apparently based its apportionment on Keith Sargent's testimony. Tuf Flight Industries asked Sargent whether or not he had an opinion about the percentage that each party used the alley. He answered:

A. Oh, roughly, I would say maybe that we probably used the alleyway probably maybe 80/20.

Q. And that would be 80 for whom?

A. For where we were, the [Harris property].

Q. And twenty percent of the time it was being used by?

A. The [Tuf Flight Industries'] shopping center.

■ As a general rule, the owner of a servient estate is under no obligation to repair or to maintain the easement in the absence of an agreement to the contrary. *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983, 987 (1933); *Annin v. Lake*

*Montowese Development Company, Inc.,* 759 S.W.2d 240, 241–42 (Mo.App.1988); *Swingler v. Robinson,* 321 S.W.2d 29, 32 (Mo.App.1959); *see also* 2 G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY §§ 428–29 (1980). If, however, the dominant and servient estate owners regularly use the property, the obligation to repair and to maintain it may be apportioned accordingly so that all contribute in proportion to their use. *Marvin E. Nieberg Real Estate Company v. Taylor–Morley–Simon, Inc.,* 867 S.W.2d 618, 623 (Mo. App.1993); *McDonald v. Bemboom,* 694 S.W.2d 782, 784–86 (Mo.App.1985); 28A C.J.S. *Easements* § 169 (1996).

Because Harris and Tuf Flight Industries did not have an agreement to the contrary and apportionment was appropriate in this case, all that remains to be determined is whether or not the circuit court erred in how it allocated the financial obligations. Because we find no substantial evidence supporting the circuit court's judgment that Tuf Flight Industries' use was one-fifth of the overall use, we conclude that it did.

 Evidence is substantial when, if true, it has probative force upon the issues and enables the trier of fact to reasonably decide the case. *Kenney v. Wal–Mart Stores, Inc.,* 100 S.W.3d 809, 814 (Mo. banc 2003). Evidence based on speculation, conjecture or surmise is not substantial. *Weaver v. African Methodist Episcopal Church, Inc.,* 54 S.W.3d 575, 581 (Mo.App.2001). A witness' responses can be so evasive or equivocal that his or her testimony cannot be deemed substantial. *See, e.g., Barnes Hospital v. Missouri*

*Commission on Human Rights,* 661 S.W.2d 534, 537 (Mo. banc 1983).

That Tuf Flight Industries' use of the alley was "roughly," "maybe," "probably," and "probably maybe" one-fifth of the overall use was not probative evidence on the use issue and offered no assistance in deciding the parties' appropriate burden.[2] It was equivocating and not helpful to the fact-finder. Nor did the evidence support an equal allocation. Sargent testified that tenants in both buildings received deliveries via the alley—not that their use was equal.

We, therefore, grant Harris' second point. We do not determine that Tuf Flight Industries must pay more than 20 percent of the costs, but only that substantial evidence did not support that allocation. Neither, however, did the evidence establish what allocation was proper. We, therefore, reverse that portion of the circuit court's judgment apportioning the costs of removing the curb and gravel, completing improvements to the alley, and maintaining the improvements to the alley. We remand the case to the circuit court so it may receive additional evidence on the matter of apportionment of the costs.

LISA WHITE HARDWICK, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.

---

**2.** Although Tuf Flight Industries informs us that Sargent also testified that Harris had larger trucks making deliveries and that they were "gonna do more damage" to asphalt, that evidence has no bearing on the issue of apportionment. Harris paved the alley with concrete. Because the record is silent on the issue of whether or not the trucks making deliveries to the Harris property would also cause more damage to concrete, we see nothing in that testimony to suggest that Harris should bear a larger share of the costs.