Daniel SMITH and Terri A. Smith
and Dixon's 40 HWY, Inc.,
Respondents,

v.

CHAMBLIN PROPERTIES,
LLC, Appellant,

Ted Winningham, Defendant.

No. WD 66130.

Missouri Court of Appeals,
Western District.

Sept. 26, 2006.

Bradley C. Nielsen, Kansas City, MO, for appellant.

Richard D. Jacoby, Independence, MO, for defendant.

David R. Frensley, Kansas City, MO, for respondents.

Before: HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

**Factual and Procedural Background**

Respondents Daniel and Terri Smith purchased the property at 9105 East 40 Highway in 2001. Members of Ms. Smith's family had leased this property since 1968 in order to operate Dixon's Famous Chili (Dixon's). In 1985 Ms. Smith inherited the family business and continued to lease the property until she purchased it in 2001. Appellant Chamblin Properties, LLC. (Chamblin) bought the eastern adjoining real estate at 9101 and 9103 East 40 Highway in 2002. Tim Chamblin owns and operates the center building at 9103, and leases the western building at 9101 to Defendant Ted Winningham.[1] The property located at 9101

---

1. Mr. Winningham did not appeal the decision of the trial court.

and 9103 have had various occupants since 1968.

The buildings at 9101, 9103, and 9105 abut each other and are surrounded by off-street parking on the north/front, east, and south/rear of the buildings. Each entity owns the parking spaces in front of it. Dixon's owns the east parking area, and Chamblin owns the south parking area. The parties disputed the use of the lots, and the Smiths brought a petition for declaration of a prescriptive easement and Chamblin counterclaimed for a mutual prescriptive easement.

At trial, the Smiths' witnesses testified about the use of the parking areas since 1970. The evidence indicated that the parking areas were shared regardless of which building was being visited. Chamblin did not present evidence regarding use of the parking areas by its predecessors in interest, nor was any evidence presented about permission for the use. The north parking area in front of the buildings was shared since about 1970 and the south parking area in the buildings' rear since about 1985. The parking was used mostly during lunch and dinner, and often during other times no use was made of the parking areas by Dixon's. Dixon's customers, vendors, employees, and the Smiths used the southern parking lots for ingress and egress between Dixon's and Blue Ridge Cutoff, which lies just west of the properties.[2] Also, since about 1985 Dixon's dumpsters for trash and grease rested partly on the south parking area. Chamblin only presented Mr. Chamblin's testimony at trial, which did not touch on the historical uses of the parking areas.

The sharing of the parking areas continued until Chamblin and Winningham began operation next to Dixon's. In 2002, Chamblin and Winningham placed signs in front of their businesses only allowing parking for their customers, and they towed Dixon's customers' vehicles that parked there. In 2002 Chamblin also blocked access through its rear parking lot with large metal containers and cable, and in 2004, Mr. Chamblin placed a cable along the southern line of the Smiths' east parking lot. This blocked parking in a portion of the rear parking area and ingress and egress from Dixon's Chili and Blue Ridge Cutoff through Chamblin and Winningham's rear parking area.

The trial court found that the Smiths had established a prescriptive easement by clear and convincing evidence, and denied Chamblin's counterclaim for a mutual prescriptive easement. Chamblin filed a motion for new trial based on its defense that the use was not adverse and, therefore, the prescriptive easement should not have been granted. The motion for new trial was denied. Chamblin appeals the decisions of the trial court.

## Standard of Review

█ In a court tried case, the decision of the trial court should not be reversed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Analysis

█ In its first point Chamblin asserts that because the Smiths' use of its property was not adverse, granting a prescriptive easement was improper. Five elements must be proven to establish a prescriptive easement: a use of the property that is continuous, uninterrupted, visible and adverse for a period of ten years.

2. A picture of the property is depicted in   Exhibit 12.

*Whittom v. Alexander–Richardson P'ship,* 851 S.W.2d 504, 508 (Mo. banc 1993). Prescriptive easements are not favored in the law and courts should grant them only when the elements have been established by clear and convincing evidence. *Tuf Flight Indus., Inc. v. Harris,* 129 S.W.3d 486, 488 (Mo.App. W.D.2004). Chamblin concedes that the prescribed period of ten years was met, since the evidence showed that the entire parking area in question was used since 1985 and probably as far back as 1970.

■ For a use to be continuous, a constant use is not required, but the essential attitude about the use must be continuous. *Id.* at 488–89. Thus, the fact that the parking spaces were not constantly in use does not destroy continuous use, so long as the attitude about that use was continuous. The evidence showed that the Smiths thought of the tracts of land as a shopping center, thereby demonstrating the belief that the owner of the property had no right to exclude them, their customers, or their employees from parking in the lot.

■■ The uninterrupted use finding by the trial court was also supported by sufficient evidence. "In considering whether or not a use was uninterrupted, the courts look only at the actions of the party against whom the prescriptive right is claimed—i.e., the owner of the servient estate." *Id.* at 489. Thus, the owner of the property must interrupt the adverse use during the ten-year time period to destroy the prescriptive easement. *Id.* Although Chamblin blocked access to the rear area of the parking lot by placing chains and tractor-trailers on the property, this was not done until well after the ten-year time had passed and the elements for the prescriptive easement had been established.

■ The use must be visible to put the owner on notice. *Id.* Where the use is open "so that any reasonable person would have discovered its existence," the use is visible. *Id.* at 490. The parking lot was openly used, both for parking and as a storage area for trash dumpsters. The key is not whether the owner knew about the use, but whether the use was open so that it could reasonably be discovered. *Id.* The use of the parking lot was open and visible for the owner to see. This was established before Mr. Chamblin bought the property, so visibility to him is immaterial. The fact that he did not recall seeing cars pass through the property when he was considering buying the property is also immaterial, because actual knowledge is not required.

■ The use was adverse and was supported by sufficient evidence. "A use is adverse . . . when it is (1) 'not made in subordination' to the owner, (2) 'wrongful, or may be made by [the owner] wrongful, as to him,' and (3) 'open and notorious.'" *Johnston v. Bates,* 778 S.W.2d 357, 361–62 (Mo.App. E.D.1989). When a use is made without recognition of the right in any person or party connected with this cause to permit or prohibit his use, it is not made in subordination to the owner. *Homan v. Hutchison,* 817 S.W.2d 944, 950 (Mo.App. W.D.1991). "It is the non-recognition of such authority at the time a use is made which determines whether it is adverse." *Jacobs v. Brewster,* 354 Mo. 729, 190 S.W.2d 894, 899 (1945) (citations omitted). A finding of adversity is often inferred, not directly proved. *Whittom,* 851 S.W.2d at 509. "Proof that a particular use of another's land has in fact occurred normally justifies a finding that the use has been adverse[.]" *Id.* A long and continuous use justifies the presumption of adversity and shifts the burden to the owner to counter the presumption by proving that permis-

sion was given for the use. *Gill Grain Co. v. Poos*, 707 S.W.2d 434, 437 (Mo.App. W.D.1986).

▮ In this case, the Smiths and their predecessors in ownership used the land of another since at least 1985, thus raising the presumption of adverse use. Chamblin must prove that the use was permissive to counter the claim of adversity. At trial, Chamblin presented no evidence that the use was permissive. The fact that the parking spaces were considered shared does not render the use permissive because the use need not be belligerent to establish that it was adverse. *Whittom*, 851 S.W.2d at 509.

▮ Furthermore, the trial court found that the use was by acquiescence, not permission. The law imputes an owner's knowledge of uses of his land by another. *Boyce v. Mo. Pac. R.R.*, 168 Mo. 583, 68 S.W. 920, 922–23 (1902). If the owner does not seek legal aid to stop the use of the land within the time period, he acquiesces to the use. *Id.* Once a prescriptive easement has been established by adverse use, actions that normally would be evidence against the prescriptive easement, such as asking permission to use the property, have no legal effect. *Phillips v. Sommerer*, 917 S.W.2d 636, 640 (Mo.App. W.D.1996). Thus, the Smiths' attempt to buy or lease the property did not eliminate the prescriptive easement, which had already been established by adverse use for more than ten years.

Chamblin asserts also that the prescriptive easement should fail because the use was not exclusive. The Missouri Supreme Court, dealing with this issue, stated that "[i]t is not required that the adverse use be exclusive." *Whittom*, 851 S.W.2d at 508. This point is denied.

▮ In his second point, Chamblin argues that the easement should not have been granted because he was a bona fide purchaser and had no way of knowing of the easement. "It is true that generally a bona fide purchaser of land without knowledge or notice, actual or constructive, of an easement in the land takes title free of any such burden. There is a presumption, however, that the purchaser has constructive notice where an ordinary inspection of the property would have revealed the servitude." *Fortenberry v. Bali*, 668 S.W.2d 216, 220 (Mo.App. E.D.1984). (citations omitted). Here, the trial court found that a normal inspection of the premises prior to the purchase by Mr. Chamblin of the properties would have revealed the parking practices of the Smiths' customers. Although Mr. Chamblin testified he did not recall seeing any cars parked or entering or leaving the parking lot, the trial court found that Mr. Chamblin's testimony was not credible. This point is denied.

▮ In its final point, Chamblin argues, in the alternative, that the trial court erred in denying a mutual prescriptive easement over portions of the Smiths' property because the same facts supporting a prescriptive easement for the Smiths on Chamblin's property support a prescriptive easement for Chamblin over the Smiths' property. The Smiths argue that Chamblin's theories of defense and recovery are inconsistent and they must elect one in the litigation. The Smiths also argue that Chamblin abandoned the counterclaim for a mutual prescriptive easement by electing to pursue the allegations in the answer that the Smiths had no prescriptive easement.

▮ First, the doctrine of election of inconsistent theories is inapplicable. In this case, Chamblin pled as a defense, that the use was permissive, and a counterclaim, that if the evidence presented establishes an easement, then Chamblin is enti-

tled to a mutual easement. In *Whittom,* our Supreme Court stated that a party must elect between inconsistent theories of recovery. 851 S.W.2d at 506–07. The defense in this case is not a theory of recovery and, therefore, this doctrine does not apply.[3]

Second, Chamblin did not abandon the counterclaim even though it did not present any evidence for the counterclaim at trial or discuss it in the motion for new trial. In order for an issue to be heard on appeal, it must have been heard by the judge in a judge-tried case. *State Farm Mut. Auto. Ins. Co. v. Esswein,* 43 S.W.3d 833, 839 (Mo.App. E.D.2000). "By denying an allegation in plaintiff's petition, defendant puts the issue of that allegation before the trial court." *Id.* at 840. Moreover, in a judge tried case, "[i]f a motion for new trial is filed, the fact that it may be imperfect does not prejudice the appellant's position on appeal." *Centerre Bank of Branson v. Campbell,* 744 S.W.2d 490, 496 (Mo.App. S.D.1988). Thus, the failure to discuss the counterclaim in the motion for new trial is not fatal and may still be appealed.

Furthermore, "a party is entitled to the benefit of his adversary's evidence, except in those cases where the adversary's evidence runs counter to the party's theory of recovery, or where it contradicts the party's own testimony, or where the adversary's testimony sought to be used is based solely upon the truth of a fact which the party denies." *Kestner v. Jakobe,* 446 S.W.2d 188, 194 (Mo.App. 1969). In this case, none of the exceptions apply. As previously shown, a defense is not a theory of recovery. The evidence in question only runs counter to the defense, not to the counterclaim. Furthermore, the Chamblin's defense, that the Smiths do not have a prescriptive easement, is not denying the validity of the evidence. Instead, Chamblin's defense suggests that the facts are true but deserve a different interpretation, i.e. that the facts reveal a permissive use. Therefore, the evidence in this case supports the counterclaim that requests a mutual prescriptive easement. This point is granted.

### Conclusion

The trial court's decision awarding a prescriptive easement to the Smiths is affirmed. Furthermore, Chamblin did not present inconsistent theories of recovery and did not abandon its counterclaim for a mutual prescriptive easement; so, the trial

---

**3.** Our research has not found any cases discussing the difference between a theory of recovery and a defense. But it seems reasonable that the quote in the cases ("theory of recovery or defenses") implies a distinction. For example, *Butts v. Express Personnel Services,* analyzing *Whittom,* stated that *Whittom* applies to cases "where there were multiple theories of recovery or defenses." *Butts,* 73 S.W.3d 825, 838 (Mo.App. S.D.2002). This suggests that an election must be made when there are inconsistent theories of recovery or inconsistent defenses. Furthermore, several cases have expressed the same language: "theories of recovery or defense" without further discussion. *See also,* Mo. Sup.Ct. R. 55.10 (implying a similar difference in the context of pleading in the alternative).

We also note that in *Centerre Bank of Kansas City, N.A. v. Distributors, Inc.,* this court in dicta indicated that a defense that a guaranty is void because of a representation made and a counterclaim seeking to recover damages from the agreement are inconsistent. 705 S.W.2d 42, 50–51 (Mo.App.W.D.1985). However, *Centerre* involved an election of remedies, seeking rescission of the contract and damages under the contract, and, therefore, does not apply in this case. As *Whittom* makes clear, election of inconsistent remedies and election of inconsistent theories of recovery are distinct doctrines. *Whittom,* 851 S.W.2d at 506.

court's denial of Chamblin's counterclaim was error. We reverse and remand the trial court's ruling on Chamblin's counterclaim, and a new judgment consistent with this opinion should be entered.

HAROLD L. LOWENSTEIN, P.J., and PAUL M. SPINDEN, J., concur.