

# Missouri Court of Appeals
## Southern District

### In Division

PAUL E. JOKERST, JR., and )
VERONICA SUE JOKERST, )
                             )
      Plaintiffs-Respondents, )
                             )
            v. )          No. SD38462
                             )
RONALD HUCKABY and DIANE M. )    **Filed:  April 3, 2025**
HUCKABY, )
                             )
      Defendants-Appellants, )
                             )
F & C BANK, )
                             )
      Defendant-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

The Honorable Kenneth M. Hayden, Judge

**<u>AFFIRMED</u>**

Paul E. Jokerst, Jr., and Veronica Sue Jokerst (collectively, "the Jokersts") filed suit against Ronald Huckaby and Diane M. Huckaby (collectively, "the Huckabys") and F & C Bank ("F & C"),[1] essentially seeking to keep their sewer lateral line the way the line had existed for 40 years.  The Jokersts alleged in their lawsuit, among other things,

---

[1] The Jokersts filed suit against F & C because F & C had a security interest in Lot 23.  F & C did not appear or participate at trial or in this appeal.

that they had acquired title, or alternatively, had acquired a prescriptive easement, over a portion of the Huckabys' lot, Lot 23 in Sun Valley Estates No. 2 ("Lot 23"), referred to as "Tract 1" or "the Gravel Patch," and another portion of land including a sea wall believed to be located on Lot 23, referred to as "Tract 2."[2]  The Jokersts also requested the trial court to:  (1) permanently enjoin the Huckabys, F & C, and their successors and assigns from interfering with the Jokersts' and their successors' and assigns' "reasonable use and enjoyment" of Tract 1 and Tract 2 and from interfering with the sea wall located on Tract 2; (2) order the Huckabys to remove wire fencing, fence posts, and other appurtenances from the Jokersts' lot, Lot 24 in Sun Valley Estates No. 2 ("Lot 24"), Tract 1, and Tract 2; and (3) permanently enjoin the Huckabys, their successors and assigns from constructing and/or maintaining any improvements on Lot 24, Tract 1, and Tract 2 or otherwise trespassing on Lot 24.[3]

The Huckabys, conversely, filed their counterclaim against the Jokersts, alleging, among other things, they "exclusively possess all right, title, and interest in and to Lot 23, including all portions of Tract 1 and Tract 2 situated thereon" and that the Jokersts possessed no right, title, or interest to any portions of Tract 1 or Tract 2.  The Huckabys asked the trial court to enter judgment divesting the Jokersts of any right, title, or interest in or to Lot 23, including Tract 1 and Tract 2, and to quiet title to that property in the

---

[2] The legal descriptions for Tract 1 and Tract 2 were admitted into evidence at trial as "Exhibit 235.1" and "Exhibit 235.2" respectively and are attached to the trial court's Judgment as "Exhibit 1" and "Exhibit 2" respectively.

[3] The Jokersts' other claims asserted in the lawsuit regarding the properties at issue which the trial court found in favor of the Huckabys and F & C Bank in its Judgment are not at issue in this appeal.

Huckabys' favor. The Huckabys also asked the trial court to enter a declaratory judgment declaring a survey plat of Lot 23 recorded March 22, 2016, as void.

The parties proceeded to trial on their claims on October 18, 2023. Following a bench trial, the trial court entered Judgment on the parties' claims relevant to this appeal: (1) granting the Jokersts a prescriptive easement over Tract 1; (2) permanently enjoining the Huckabys, F & C, and their successors and assigns from interfering with the Jokersts', their successors' and assigns' "reasonable use and enjoyment" of Tract 1 and Tract 2 and from interfering with the sea wall located on Tract 2; (3) ordering the Huckabys to remove wire fencing, fence posts, and other appurtenances from Lot 24, Tract 1, and Tract 2; (4) permanently enjoining the Huckabys, their successors and assigns from constructing and/or maintaining any improvements on Lot 24, Tract 1, and Tract 2 or otherwise trespassing on Lot 24; (5) denying the Huckabys' claims to quiet title in their favor as to Tract 1 and Tract 2, but quieting title in the Huckabys' favor as to Lot 23, except Tract 1, and divesting the Jokersts from all right, title, and interest to Lot 23, except Tract 1; and (6) denying the Huckabys' claim for declaratory judgment declaring the survey plat void.

In five points on appeal, the Huckabys contend the trial court's Judgment on these issues is against the weight of the evidence. Finding no merit to the Huckabys' claims, the trial court's Judgment is affirmed.

**Factual Background and Procedural History**

The following evidence relevant to this appeal, and viewed in the light most favorable to the trial court's Judgment, was adduced at trial through both live testimony and via deposition offered and admitted into evidence at trial:

The Jokersts purchased Lot 24 in August of 2012, from Allena Joy Bottger, who acquired title with her husband "around 2000." The Huckabys purchased Lot 22 in Sun Valley Estates No. 2 ("Lot 22") and Lot 23 in May of 2013, from David and Karen Fryer, who purchased the lots in 2004.[4] Lot 23 is adjacent to Lot 24. At the time the Jokersts purchased Lot 24, the Fryers owned Lot 23, and Lot 23 was being used as a buffer lot. The Jokersts learned about the potential boundary issues with their property from the Huckabys when the parties first met as the Huckabys were moving in. Mr. Huckaby told the Jokersts that he had a survey done and it looked like the Jokersts' garage and deck was either on Lot 23 or close to it, and that nine to 10 feet of the sea wall was on Lot 23.

In January of 2014, Mr. Huckaby began to construct a fence between Lot 23 and Lot 24, which encroached almost completely onto Lot 24 for the entire length of the boundary. There was not a fence there previously. Shortly thereafter, the Jokersts filed the lawsuit to assert their claims to, what they believed, constituted their property which the fence now blocked their access to. After several years of discovery, the matter proceeded to trial on October 18, 2023. Several witnesses testified regarding the boundaries of Lot 23 and Lot 24, the placement of the septic lateral line, the Gravel Patch, and the sea wall.

Paul Feld, the drilling manager with Environmental Works who conducted ground penetrating radar ("GPR") on Lot 23 and Lot 24, testified he used his GPR to determine if there was a buried septic lateral line coming off the Jokersts' septic tank and continuing onto Lot 23. He saw a lateral line coming off the septic tank when he started his work. He found a single lateral line about a foot and a half underground. The lateral line

---

[4] Lot 22 is not at issue in this case.

crossed the fence onto Lot 23 at the sewer line, and went 10 feet past the fence. Mr. Feld testified he located a hole where the lateral line had its terminus, but that he did not see the lateral line there.

Lonnie Allen, a Registered Land Surveyor with the State of Missouri, testified he was originally hired to survey the Jokersts' property and the encroachment of the fence installed by Mr. Huckaby onto their property. Mr. Allen worked with Mr. Feld and his crew to locate the lateral line coming off the Jokersts' septic system onto Lot 23. Mr. Allen also located the concrete sea wall that is along the north end of Lot 24, which terminates in the area of the Huckabys' property. Mr. Allen determined the sea wall and the platted lot line between Lot 23 and Lot 24 were below the 662 contour line, which is owned by Union Electric, and he prepared a legal description for the sea wall. Mr. Allen's survey located the Gravel Patch and he prepared a legal description for that gravel area located on Lot 23, also known as Tract 1. Mr. Allen also created a legal description for the lateral line coming off the Jokersts' septic tank and onto Lot 23. Mr. Allen testified that at the end of the lateral line, there was a hole, and it smelled of sewage. Mr. Allen did not know if the lateral line extends beyond the northeast boundary line of Lot 23. Mr. Allen recalled the land he was surveying to be clear of brush and had "a little gravel here and there." The area "seemed pretty open at the time."

Mrs. Bottger testified she purchased Lot 24 with her husband in 1999, and sold it to the Jokersts in 2012. She did not recall discussing boundary lines with the Jokersts. During the 13 years that Mrs. Bottger lived there, she did not have much grass on Lot 24 and the lot was primarily all gravel. At the time they moved in, there was dirt and gravel on the Gravel Patch, but not big rocks. There was growth that grew up between the

5

gravel on the Gravel Patch and she and her husband added additional gravel to the Gravel Patch, cut twigs, branches, and other growth, and cleaned and maintained it the entire 13 years they lived there. They maintained everything down to the ravine on Lot 23. Nobody gave them permission to maintain the Gravel Patch or other parts of Lot 23 and the Gravel Patch did not get bigger or smaller while she lived on Lot 24. When Mr. Bottger could no longer maintain the Gravel Patch, they retained Ken Wagner to cut back the vegetation to keep it from being overgrown. Mrs. Bottger also replaced the septic tank and added rip-rap[5] to the sea wall. She further testified that during her time on the property, a technician visually inspected the lateral line to confirm it was in working order and determined it was clear and did not need to be replaced. She testified the sea wall was in the same location now as when they purchased the property, and it never changed. She and her husband maintained it and had a permit for the sea wall the entire time she lived there.

Mrs. Fryer testified that her brother built the house for her and her husband on Lot 22 in 2006, and they did not try to build on Lot 23 because "[i]t's unbuildable." The Fryers did not have a survey of Lot 23 when they moved there. Mrs. Fryer testified that she did not recall during the nine years she owned Lot 23 that the Gravel Patch existed alongside the Bottgers' home. She testified she did not see gravel in the area of the Gravel Patch, just "Missouri mud with rocks." Mrs. Fryer testified she did not do anything to maintain the sea wall while she lived there and assumed it belonged to the

---

[5] "Rip[-]rap is a layer of large stones that protects soil from erosion in areas of high or concentrated flows." U.S. Environmental Protection Agency, *NPDES Stormwater Best Management Practice—Riprap* (Dec. 2021), https://www.epa.gov/system/files/documents/2021-11/bmp-riprap.pdf.

Bottgers. Mrs. Fryer testified that every time she viewed the Bottgers' home during the time she owned Lot 23, the Gravel Patch was covered by cedars and vegetation right up to the house. Mrs. Fryer testified previously in her deposition, however, that the trees and cedars blocked her view of the Gravel Patch, and that she did not know what was on the ground on the other side of the cedar trees, and that blocked her view of the septic area. She testified she had only been on Lot 23 one time, and that she never was on Lot 23 while the Bottgers lived there. She had no idea if there was gravel on the Gravel Patch and she never saw the area cleared off. She testified the Bottgers never told them to stay off the Gravel Patch or that the Gravel Patch was their property.

Mrs. Jokerst testified that at the time the Jokersts purchased Lot 24, they were under the impression that Lot 24 included Tract 1, the Gravel Patch, and Tract 2, the sea wall. The Jokersts understood that their property was "from the end of the sea wall to the tree where the dock had been connected to the tree up into the woods," which "would have encompassed the [Gravel Patch], too, because there was gravel there." The Jokersts have a permit for the dock, sea wall, and rip-rap. Mrs. Bottger had the rip-rap installed on the sea wall.

Mrs. Jokerst further testified that prior to the GPR being done they knew generally where the lateral line was, but they did not know how far it went. Mrs. Jokerst understood the Gravel Patch to be there because there was a sewer lateral line in the area. The Jokersts continued to care for Tract 1 due to the suspected lateral line in the area, but stated that they were unaware of the exact location of the lateral line until the GPR was done on September 21, 2021. When the Jokersts purchased Lot 24, Mrs. Bottger replaced the septic tank that had been there 30-plus years, but the bigger tank was put back in the

7

same place as the old tank. They blew out the lateral line at that time, but the line was not dug up or replaced. When the Jokersts purchased Lot 24, the Gravel Patch had been cleaned. The Jokersts continued to clean the Gravel Patch until Mr. Huckaby installed the fence cutting off their access. The Jokersts did nothing to change the size of the Gravel Patch from the time they purchased until trial. She further testified that from all the different pictures admitted as exhibits at trial, they are not all identical in terms of brush or greenery that is on the Gravel Patch, but that did not change the size of the Gravel Patch, it just changed how much it had been maintained. Mrs. Jokerst never saw anyone on Lot 23 until the Huckabys purchased it. Since the Huckabys purchased Lot 23, their dogs use it.

Charles Burns, the Jokersts' real estate agent, testified that he did not go out to the Jokersts' property before he showed it to them. He had no knowledge of the boundary lines between Lots 23 and Lot 24 until it was surveyed. Mr. Burns testified he had no idea how big the Gravel Patch was, where it was, or what its boundaries were, but could recall what it looked like if shown pictures. He did not recall the Gravel Patch being as large in 2012 as was depicted in Exhibits 78 and 110 admitted at trial.

Robert Arnold, a licensed surveyor in the State of Missouri with Shoreline Surveying & Engineering, testified the Huckabys hired him to perform a survey in 2013 because Mr. Huckaby wanted to know where the property line was between Lot 23 and Lot 24 because he thought that the Jokersts' sewer line encroached upon Lot 23. He testified that the sea wall does not exist anywhere on Lot 23. Mr. Arnold also testified he did not determine that the Jokersts' house, garage, or retaining wall encroached onto Lot 23.

8

Mr. Huckaby testified he did not walk around Lot 23 when he first visited Lot 22 and Lot 23 in April of 2013, when he was looking to purchase them. Mr. Huckaby has no knowledge of what people did on Lot 22, Lot 23, or Lot 24 in terms of clearing off brush or letting it grow prior to April of 2013. Prior to moving there, he did not know if the Gravel Patch was covered by gravel. Mr. Huckaby testified that he installed the fence, and that some of his fence posts were on Lot 24. He agreed that, per Exhibit 55, the wire fence is almost completely on Lot 24. He testified that while he had not seen the lateral line to the Jokersts' septic tank, he agreed that the lateral line was likely located partially on Lot 23. He confirmed that the septic tank was there before he moved in, and that the lateral line was "probably there before [he] moved in." Mr. Huckaby admitted he drove a post into the area where he believed the lateral line was located, after which he removed the post for approximately 30 days. He then poured concrete down the hole and replaced the post in order to cap the lateral line, to stop the Jokersts from using his property, and to stop what he believed was leaking of sewage. Mr. Huckaby is sure that the stake he drove into the Jokersts' lateral line is impacting the effectiveness of the line, and he testified "[he] hope[s] it does."

Mrs. Huckaby testified she did not go around Lot 23 at the time they originally looked at the property to purchase it "because it's pretty rough[.]" She testified she had no knowledge of the Gravel Patch prior to purchasing Lot 22 and Lot 23.

As relevant to the issues on appeal, the trial court entered Judgment granting the Jokersts a prescriptive easement as to Tract 1 only and permanently enjoined the Huckabys and their successors and assigns from interfering with the Jokersts' "reasonable use and enjoyment" of Tract 1 and Tract 2. The trial court entered Judgment

9

in favor of the Jokersts as to Count 6 and ordered the Huckabys to "remove the wire fence, fence posts and any other appurtenances from Lot 24, Tract 1, and Tract 2" and permanently enjoined the Huckabys "from constructing and/or maintaining any improvements on Lot 24, Tract 1, and Tract 2 . . . or otherwise trespassing on Lot 24." As to the Huckabys' Second Amended Joint Counterclaims, the trial court entered Judgment in favor of the Huckabys quieting title "to Lot 23 save and except Tract 1" and enjoining the Jokersts, their successors and assigns "from causing effluent to flow onto Lot 23."[6]

On February 22, 2024, the Huckabys filed a Joint Motion to Amend/Vacate Judgment/New Trial claiming that no clear and convincing evidence was introduced at trial as to Respondents' visible use of Tract 1.  The Jokersts similarly filed a Motion to Amend or Alter Judgment, or in the Alternative, to Reconsider, asking the trial court to extend the easement beyond Tract 1 to include the entire length of the lateral line underground.  On March 7, 2024, the trial court denied both motions.  This timely appeal followed.

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Lay v. Cunningham*, 688 S.W.3d 768, 774 (Mo. App. E.D. 2024) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 198-99

---

[6] The trial court entered Judgment in favor of the Jokersts as to the Huckabys' counterclaim for declaratory judgment, which requested the trial court declare that a survey plat recorded on March 22, 2016, was "void and of no legal effect as to [] Lot 23."

(Mo. banc 2014)). We are primarily concerned with whether the trial court reached the correct result, not the route taken to reach it; accordingly, we will affirm the trial court's judgment when it is sustainable based on any ground supported by the record. *Halper v. Halper*, 604 S.W.3d 904, 908-09 (Mo. App. E.D. 2020). Here, each of the Huckabys' points contend that the trial court's Judgment is against the weight of the evidence.

When reviewing a challenge to a judgment as against the weight of the evidence, this Court acts with caution and will only reverse in rare cases when there is a firm belief that the judgment is wrong. *Ivie*, 439 S.W.3d at 205-06. "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *In re J.A.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014). "To prevail on an against-the-weight-of-the-evidence challenge, a litigant must show that the trial court could not have reasonably found, from the trial record, the presence of a fact necessary to uphold the judgment." *McKinney v. Smith*, 520 S.W.3d 533, 538 (Mo. App. S.D. 2017) (citing *Ivie*, 439 S.W.3d at 206). The weight of the evidence is determined by its effect in inducing belief, not by the quantity of the evidence presented. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (citing *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo. App. W.D. 1997)). We must only set aside a judgment as "against the weight of the evidence" where we firmly believe the judgment is erroneous. *Id.* (citing *Gifford*, 951 S.W.2d at 643). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Ivie*, 439 S.W.3d at 206.

The trial court is entitled to believe "all, part, or none of the evidence, and we must defer to its factual findings . . . [.]" *Hurricane Deck Holding Co. v. Spanburg Invs., LLC*, 548 S.W.3d 390, 393 (Mo. App. S.D. 2018). "When the evidence poses two reasonable but different conclusions, [we] must defer to the [trial] court's assessment of that evidence." *Ivie*, 439 S.W.3d at 206. Furthermore, we defer to the trial court's findings of fact when the factual issues are contested and when the facts turn on credibility determinations. *Id.* We review all evidence and inferences in the light most favorable to the judgment and ignore all contrary evidence and inferences. *Houston*, 317 S.W.3d at 183 (citing *Landers v. Sgouros*, 224 S.W.3d 651, 655 (Mo. App. S.D. 2007)).

## Point I

The Huckabys claim in Point I:

the trial court erred in entering a prescriptive easement in favor of [the Jokersts] over Tract 1 for the purpose of maintaining the lateral line[], [the Gravel Patch,] and garage overhang thereon together with a prescriptive easement of ingress and egress over Tract 1, because a prescriptive easement requires clear and convincing evidence of visible use, and the trial court's finding of visible use is against the weight of the evidence.[7]

---

[7] Point I violates the mandatory briefing rules set forth in Rule 84.04, Missouri Court Rules (2024). Rule 84.04(d)(1) requires:

The point shall be in substantially the following form: "The [*name of agency*] erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error, including the reference to the applicable statute authorizing review*], in that [*explain why, in the context of the case, the legal reasons support the claim of reversible error*]."

Rule 84.04(d)(1). Compliance with Rule 84.04 is mandatory, and this Court may use its discretion to review all, some, or none of the issues that fail to comply with the rule. *Scott v. King*, 510 S.W.3d 887, 891-93 (Mo. App. E.D. 2017) (citing *Rockwell v. Wong*, 415 S.W.3d 805, 805-06 (Mo. App. E.D. 2013)). This Court has the "discretion to review non-compliant points *ex gratia* where the argument is readily understandable[.]" *Crowley v. Clarcor/Gen. Elec. and Treasurer*, 655 S.W.3d 778, 786 (Mo. App. W.D. 2022). Because we understand the non-

12

In support of their claim, the Huckabys argue that the trial court could not have reasonably found that either the Jokersts or their predecessors in interest had visibly used Tract 1 for a period of 10 years.[8] We disagree.

"A party claiming a prescriptive easement bears the burden of proving five elements by clear and convincing evidence:  use of the claimed easement was (1)

compliant point and it does not impede our review, we choose to exercise our discretion and review Point I *ex gratia*.

[8] Despite making an against-the-weight-of-the-evidence challenge, the Huckabys' argument portion of their Appellant's Brief seemingly sets forth arguments for a misapplication of the law challenge.  Specifically, they argue that the law in Missouri is not settled on whether maintenance of land is sufficient to establish visible use for purposes of establishing a prescriptive easement and cite to **Bales v. Shepard**, 867 N.W.2d 195 (Iowa App. 2015), and **Hager v. George**, No. M2013- 02049-COA-R3-CV, p. 7 (Tenn. App. Jul 08, 2014).

> The argument section of an appellant's brief serves as the vehicle by which an appellant demonstrates why the trial court ruling or action, as specifically identified in the point relied on, is erroneous because of the legal reasons, as concisely stated in the point relied on, in that the case context, as summarily asserted in the point relied on, supports the stated legal reasons for the claim of reversible error. Rule 84.04(d)(1)(A)-(C). This means that "[t]he argument *shall* be limited to those errors included in the 'Points Relied On.'" Rule 84.04(e) (emphasis added). "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review." *Davis v. Wieland*, 557 S.W.3d 340, 352 n.10 (Mo. App. [W.D.] 2018) (internal quotation marks omitted).

**Hale v. Burlington N. & Santa Fe Ry. Co**., 638 S.W.3d 49, 61 (Mo. Ap. S.D. 2021).  To the extent that the Huckabys' argue a misapplication of the law challenge, we decline to extend our analysis beyond the against-the-weight-of-the-evidence challenge claimed in the Huckabys' point relied on.  Even if we were to consider the misapplication of the law challenge, the facts in **Bales** and **Hager** are distinguishable from the facts here, as both cases involve potential prescriptive easements that are above the ground instead of the maintenance above ground where utilities are buried beneath the surface of the ground; thus, leaving the Huckabys with a weak argument that does not apply to the issues here.

continuous; (2) uninterrupted; (3) visible; and (4) adverse for (5) a period of 10 years." *Hodgkinson v. Hatten*, 687 S.W.3d 201, 206 (Mo. App. S.D. 2024) (quoting *Warren v. Dunlap*, 532 S.W.3d 725, 728 (Mo. App. S.D. 2017)). Missouri law disfavors the granting of prescriptive easements. *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 119 (Mo. banc 2010) (citing *Jacobs v. Roschevitz*, 20 S.W.3d 598, 600 (Mo. App. S.D. 2000)). The Huckabys' argument focuses on the "visible" element and does not dispute that the Jokersts' use of Tract 1 was continuous, uninterrupted, adverse, or for a period of 10 years. Whether the use was "visible" was a fact question that was contested at trial. The evidence as to this fact presented at trial consisted of witness testimony and photographs. Because the ultimate factual issue was contested, we are required to defer to the trial court's credibility determinations and its prerogative to believe all, part, or none of this evidence offered to prove the fact. *Hurricane Deck*, 548 S.W.3d at 393.

Further, "[w]hether the use of the land establishes a prescriptive easement is a fact question to be inferred from the circumstances and the nature and character of the use." *Lay v. Cunningham*, 688 S.W.3d 768, 779 (Mo. App. E.D. 2024) (quoting *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 784 (Mo. App. W.D. 2019)); *see also Wertz-Black v. Guesa USA, LLC*, 524 S.W.3d 68, 72 (Mo. App. W.D. 2017) (quoting *Whittom v. Alexander-Richardson P'ship*, 851 S.W.2d 504, 508 (Mo. banc 1993)). And "[w]e defer to the factual findings of the trial judge, who is in a superior position to assess credibility[.]" *Wertz-Black*, 524 S.W.3d at 72 (quoting *Custom Muffler & Shocks, Inc. v. Gordon P'ship*, 3 S.W.3d 811, 817 (Mo. App. W.D. 1999)). "Where the use is open 'so that any reasonable person would have discovered its

14

existence,' the use is visible." ***Smith v. Chamblin Props, LLC***, 201 S.W.3d 582, 587 (Mo. App. W.D. 2006) (quoting ***Tuf Flight Indus., Inc. v. Harris***, 129 S.W.3d 486, 490 (Mo. App. W.D. 2004)). "The key is not whether the owner knew about the use, but whether the use was open so that it could reasonably be discovered." ***Id.*** "[A]ctual knowledge is not required." ***Id.*** Giving deference to the trial court's credibility determinations and having considered all the evidence contrary to the judgment, this Court is not firmly convinced the trial court's finding of visible use is against the weight of the evidence.

The Huckabys admit there was "sufficient probative evidence" admitted at trial that the Jokersts had "visibly maintained" Tract 1 by "clearing off growth and weeding." Instead, they argue the maintenance of Tract 1, alone, is not "use" of land sufficient to establish a prescriptive easement. Simply put, the Huckabys argue the Jokersts' maintenance of Tract 1 is not sufficient to establish use. But, the Huckabys fail to connect the entirety of the evidence establishing "visible use" of Tract 1. The evidence established that the lateral line is beneath the surface of the Gravel Patch, and had been in that location for more than 30 years. The lateral line was visible coming off the Jokerst septic, and the terminus on Lot 23 is above ground in the form of a hole that smells of sewage. Mr. Huckaby testified that he had seen water "coming out of the rock on Lot [23.]" Additionally, the Jokersts and their predecessors in interest visibly maintained the surface of Tract 1, the Gravel Patch above ground which was visible to all, for well beyond the requisite amount of time required to establish a prescriptive easement.

Specifically, the uncontroverted evidence presented at trial established the Gravel Patch and ground underneath the surface of the Gravel Patch, collectively known as Tract

15

1, existed and was maintained by the Bottgers as their own for at least 13 years before the Jokersts purchased Lot 24. The Jokersts knew generally where the lateral line was prior to the GPR being done, but they did not know how far it went. The Jokersts also understood the Gravel Patch to be there because there was a sewer lateral line in the area, and they continued to maintain the Gravel Patch after they purchased Lot 24 from Mrs. Bottger due to the lateral line. The lateral line had been in the same location on Tract 1 and beyond for at least 30 years. While the lateral line was blown out at the time Mrs. Bottger replaced the septic tank, the line was not dug up or replaced. A technician had visually inspected the lateral line and said it was clear and did not need to be replaced. There was dirt and gravel on the Gravel Patch when Mrs. Bottger moved in, and the Gravel Patch did not get bigger or smaller while she lived on Lot 24.

Additionally, Mr. Feld saw the lateral line coming off the septic tank when he conducted GPR on Lot 23 and Lot 24, and he located a hole on Lot 23 where the lateral line had its terminus. Mr. Allen also located a hole at the end of the lateral line on Lot 23 when he was surveying Lot 23 and Lot 24, and it smelled of sewage.

Mr. Huckaby testified he has no knowledge of what people did on Lot 22, Lot 23, or Lot 24 regarding maintenance prior to April 2013. He testified he did not know if the Gravel Patch was covered by gravel prior to him purchasing Lot 23. He agrees there is a lateral line to the Jokersts' septic system and he has "a suspicion that one goes over into this area on my property" and the lateral line was likely located partially on Lot 23. He testified all the houses in the development are on septic because there is no other option and no city sewer is available. He testified he thinks the lateral line goes under the ground and there are several pins on Lot 23 which is likely where the lateral line goes

16

through the lot. He also testified he looked at the Camden County permit showing an open septic tank and the white pipe from the tank goes toward Lot 23 very close to the property line, but he does not know how far the lateral line goes past that line. He also testified he saw water "coming out of the rock on Lot [23]" and agreed the septic tank on Lot 24 was there before he moved in and the lateral line was "probably there before I moved in." Additionally, Mr. Huckaby admitted that, in February 2016, he drove a post into the area where he believed the lateral line was located, after which he removed the post for approximately 30 days. When he removed the post, a "cloud of air" that smelled "very stenchy" came out of the ground for about "30 seconds." He then replaced the post in order to cap the lateral line and to stop the Jokersts from using his property and to stop what he believed was leaking of sewage. He smelled an odor, and then poured concrete down into the hole, replaced the stake, and packed it down.

Conversely, Mrs. Fryer did not recall the Gravel Patch existing on Lot 23 by the Bottgers' home, but she also stated that the trees and cedars blocked her view of the Gravel Patch and she did not know what was on the ground on the other side of the cedar trees. She also testified she was never on Lot 23 while the Bottgers lived there and she had no idea if there was gravel on the Gravel Patch. While Mr. Burns did not recall the Gravel Patch being as large in 2012 as the pictures depicted at trial, he originally had no idea how big the Gravel Patch was, where it was located, or what its boundaries were.

Ultimately, the trial court, after making its credibility determinations of the witnesses, determined the Jokersts established by clear and convincing evidence they were entitled to a prescriptive easement to Tract 1. The evidence showed the Jokersts and their predecessors maintained the Gravel Patch, the surface of the ground above

17

where the lateral line lies, to protect and maintain its use since the lateral line is underground. However, the trial court's Judgment did not grant the Jokersts a prescriptive easement over additional portions of Lot 23 where the lateral line lies outside the perimeters of Tract 1. Instead, the trial court's Judgment granted the Jokersts a prescriptive easement only to Tract 1, the land comprised of the Gravel Patch on its surface, which the evidence presented at trial showed was visible. The trial court could reasonably infer from the evidence that the reason the Jokersts and the Bottgers maintained the Gravel Patch for cumulatively well over 13 years was due to the lateral line being located under the Gravel Patch. The fact that the trial court limited the prescriptive easement to the Gravel Patch, or Tract 1, and did not extend the prescriptive easement beyond Tract 1 where additional portions of the lateral line lies, indicates the trial court deemed the evidence of the maintenance to the Gravel Patch over which the lateral line lies constituted visible use of the land. The trial court's finding of visible use to support a prescriptive easement was not against the weight of the evidence.[9] Point I is denied.

_____

[9] Additionally, as the party asserting an against-the-weight-of-the-evidence challenge, the Huckabys were required to follow a four-step analytical process:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

## Points II, III, and IV

The Huckabys' claims in Points II, III, and IV all rest upon whether this Court determined the trial court erred in entering a prescriptive easement in the Jokersts' favor as to Tract 1 as argued in Point I. In making their respective claims on each of these points, the Huckabys incorporate their argument on Point I without providing a separate argument or analysis on each separate point.

> [B]ecause the argument is so closely intertwined with the specific elements of its associated point relied on, "the use of incorporation by reference is not sufficient in the argument section of a Point Relied On." *Frazier v. City of Kansas City, Missouri*, 467 S.W.3d 327, 346 (Mo. App. [W.D.] 2015); *see also Sugar Ridge Properties v. Merrell*, 489 S.W.3d 860, 873 n.8 (Mo. App. [S.D.] 2016) ("Individual points relied on necessarily present separate arguments and deserve separate analysis. A party is obligated to support all points with appropriate argument and legal authority, *Lattimer v. Clark*, 412 S.W.3d 420, 423 (Mo. App. [W.D.] 2013), and that obligation is not satisfied by references to other portions of the brief.").

*Hale*, 638 S.W.3d at 62. Not providing a separate argument for each individual point relied on warrants denial of the point. *Sugar Ridge*, 489 S.W.3d at 873 n.8.

---

*Houston*, 317 S.W.3d at 187. The Huckabys do identify a challenged factual proposition in that they challenge the finding of visible use. They further identify the evidence contrary to the challenged proposition. However, they fail to identify the evidence favorable to finding visible use and, thus, do not demonstrate why that evidence is so lacking that it cannot induce belief of visible use. The Huckabys' failure to identify evidence in the record favorable to the judgment, and their subsequent failure to demonstrate why that evidence cannot prove visible use, does not follow the required framework to satisfy the against-the-weight-of-the-evidence challenge. *See id.* at 187-88 (holding that defendant's failure to identify the evidence in the record favorable to the judgment "doom[ed] their ability to satisfy the last step" of the against-the-weight-of-the-evidence challenge). Consequently, they could not engage in the fourth step of the required analysis, as they have not explained why any favorable evidence is so lacking in probative value that it fails to induce belief in the proposition.

19

Irrespective of the Huckabys' failure to properly brief their arguments in these points without incorporating their arguments from Point I, because we determined the trial court's granting of a prescriptive easement as to Tract 1 is not against the weight of the evidence, the trial court's Judgment entering a permanent injunction enjoining the Huckabys, their successors and assigns from interfering with the Jokersts' "reasonable use and enjoyment" of Tract 1 is not against the weight of the evidence as claimed in Point II. Likewise, the trial court's Judgment entering a permanent injunction and ordering the Huckabys to remove the wire fence, fence posts, and all other appurtenances from Tract 1 is not against the weight of the evidence as claimed in Point IV. Additionally, given our decision in Point I, Point III is moot. Points II, III, and IV are denied.

**Point V**

The Huckabys claim in Point V:

> the trial court erred in entering judgment in favor of [the Jokersts], because the purpose of the declaratory judgment act is to afford relief from uncertainty, and the trial court's failure to declare the survey plat recorded March 22, 2016, as void as to Lot 23 is against the weight of the evidence.

The Huckabys argue the survey plat recorded on March 22, 2016, which was admitted as Exhibit L, is void in that it is inconsistent with the legal description of Tract 1 contained in other exhibits attached to the trial court's Judgment. The Huckabys further claim this inconsistency is a cloud on title, making the property's title unclear.

Because the trial court's Judgment sets forth the proper and accurate legal description of Tract 1 and supplants that of the earlier survey plat filed March 22, 2016, this issue is moot. The trial court's Judgment provides instruction to anyone investigating the title to or boundaries of Lot 23 and Lot 24 regarding the boundaries and

20

easements thereon. Moreover, the record reflects the Huckabys failed to introduce any evidence at trial on this claim, or ask the trial court for judgment in their favor on Count VI of their Second Amended Counterclaim. Without evidence supporting their claim, the trial court's Judgment against them simply cannot be against the weight of the evidence. Point V is denied.

The trial court's Judgment is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

BECKY J. WEST, J. – CONCURS